Kimberly Estelle, the daughter of John Estelle, deceased, sued John's landlord, Ruthie Lee Cunningham, alleging fraud and undue influence, claiming that Ruthie had induced John to change the beneficiary on his life-insurance policies from Kimberly to Ruthie. The trial court entered a summary judgment in favor of Ruthie on the ground that a former beneficiary has no standing to sue the new beneficiary based on an allegation of undue influence. We reverse.
 Facts and Procedural History
For the last 17 years of his life, John lived in a boarding house owned and operated by Ruthie. In addition to being John's landlord, Ruthie assisted John with his personal needs, including his banking.
John had three life-insurance policies with Mutual Savings Life Insurance Company ("MSLI"), the first issued in December 1991, the second in June 1996, and the third in March 2001. John initially named his daughter, Kimberly, as the beneficiary on the first two policies, and he named Ruthie as the beneficiary on the third policy. In February 2001, however, John changed the designation of the beneficiary on the first two policies from Kimberly to Ruthie. Kimberly alleges that Ruthie induced John to change the designation of beneficiary on the policies through fraud and undue influence.
Kimberly sued both MSLI and Ruthie; after MSLI interpleaded the proceeds of the policies into the court, the trial court dismissed it as a party. Ruthie denied the allegations of fraud and undue influence and moved for a summary judgment. The trial court granted Ruthie's motion, finding that Ruthie was the lawful beneficiary of the policies and that she was entitled to a judgment as a matter of law.
Kimberly appealed the trial court's judgment to the Court of Civil Appeals, arguing that the record contains evidence indicating that Ruthie's alleged undue influence over John caused him to change the beneficiary of his life-insurance policies sufficient to survive a summary judgment. The Court of Civil Appeals affirmed the trial court's judgment, stating:
 "In Alabama, `[a] beneficiary cannot attack a change of beneficiary designation on the ground of undue influence . . . because [s]he has an interest which is a mere expectancy, which cannot become vested until the death of the insured.' Owens v. Coleman, 520 So.2d 514, 516 (Ala. 1987). `Under the uniform decisions of this court, the right to change the beneficiary being reserved, the beneficiary ha[s] no vested right, but only an expectancy. . . . [T]he right to change being reserved does not give the first beneficiary any right to claim *Page 1088 
the proceeds of the policy.'[1] Taylor v. Southern Bank Trust Co., 227 Ala. 565, 568, 151 So. 357, 360 (1933). See also Barnett v. Boyd, 224 Ala. 309, 312, 140 So. 375, 377 (1932) (`[T]he beneficiary cannot attack a change of beneficiary by the insured on the grounds of fraud or undue influence, . . . [because] such beneficiary has an interest that is a mere expectancy which cannot become vested until fixed by death of the insured.')."
Estelle v. Cunningham, 982 So.2d 1082, 1084
(Ala.Civ.App. 2006) (footnote omitted). The Court of Civil Appeals held, as required by this Court's precedent, that, because Kimberly's interest as an original beneficiary under the policies was a mere expectancy, Kimberly lacked standing to assert the claims of fraud and undue influence against Ruthie.
 Issue
The issue is whether a prior beneficiary of an insurance policy is precluded from suing the subsequent beneficiary, asserting fraud or undue influence on the deceased insured, when the insured had the right to change the beneficiary.
 Standard of Review
"Where the facts are not in dispute and we are presented with a pure question of law, as here, this Court's review is de novo."Christian v. Murray, 915 So.2d 23, 25 (Ala. 2005)
 Analysis
In Owens v. Coleman, 520 So.2d 514, (Ala. 1987), Jimmie Coleman changed the beneficiary designations on his credit-union account and life-insurance policy several times shortly before his death, variously naming his children and his sister as the beneficiaries. The trial court found several of those beneficiary designations to be void, at first on grounds of undue influence and later because it found Coleman to be mentally incompetent. This Court held that the trial court properly found that the beneficiary designations were void based on the showing of Coleman's mental incompetence, but it further noted, in dicta, that "[a] beneficiary cannot attack a change of beneficiary designation on the ground of undue influence alone. . . ." 520 So.2d at 516.
As its rationale for treating a change in beneficiary resulting from the mental incompetence of the policyholder differently from a change in beneficiary resulting from undue influence on the insured by the new beneficiary, this Court noted two things. First, it noted that when a mentally incompetent policyholder changes the beneficiary on his or her life-insurance policy, the "beneficiary designations . . . can properly be declared void by the trial court," implying that the same is not true when a policyholder changes the beneficiary as a result of undue influence. 520 So.2d at 516. For the proposition that a change in beneficiary designation by a mentally incompetent insured can be declared void, the Court in Coleman cited Williamson v. Matthews,379 So.2d 1245, 1247 (Ala. 1980), which notes that "the contracts of an insane person are absolutely void." Thus, we applied inColeman "the generally accepted rule that if at the time he attempted to change the beneficiary, the insured was mentally incompetent, such an attempted change is ineffective . . . and the original beneficiary has such a substantial interest as would justify an *Page 1089 
action to prevent or annul such a change." McRee v.Russell, 239 Ala. 343, 345, 194 So. 827, 828 (1940). Because an insurance policy that has been changed while the policyholder was mentally incompetent is void, the original beneficiary is entitled to sue.
However, this analysis can be applied with equal force to an insurance policy in which the beneficiary has been changed as a result of undue influence upon the policyholder. "The essence of undue influence is that the will of the influencing party so overpowered the will of the other party that the other party's act essentially became the act of the influencing
party." Fortis Benefits Ins. Co. v. Pinkley,926 So.2d 981, 988 (Ala. 2005). Thus, an insurance policy that has been changed as a result of undue influence is void for the same reason that an insurance policy that has been changed while the policyholder was mentally incompetent is void: the act of changing the beneficiary was not meaningfully the act of the policy-holder. See McAlister v. Deatherage,523 So.2d 387, 388 (Ala. 1988) ("`A party cannot avoid a cont[r]act, free from fraud or undue influence, on the ground of mental incapacity, unless it be shown that his insanity . . . was of such character that he had no reasonable perception or understanding of the nature and terms of the contract.'" (quoting Weaver v. Carothers, 228 Ala. 157,153 So. 201, 202 (1934))); Pinkley, 926 So.2d at 988
("Legally, therefore a change of beneficiary procured by undue influence is — like a forgery — not the act of the policy owner.").
Second, this Court in Coleman noted that when a policyholder changes the beneficiary as the result of the exertion of undue influence over him by another, the interest of the former beneficiary "is a mere expectancy, which cannot become vested until the death of the insured."520 So.2d at 516. This Court implied that the same is not true of a change in beneficiary made while the policyholder was mentally incompetent. 520 So.2d at 516. To support this proposition, the Court in Coleman cited Barnett v. Boyd,224 Ala. 309, 312, 140 So. 375, 377 (1932), which states that "this court is committed to the view that the beneficiary in cases of this character cannot attack a change of beneficiary by the insured on the ground of fraud or undue influence, upon the theory that such beneficiary has an interest that is a mere expectancy which cannot become vested until fixed by death of the insured."
As we note above, however, a change in beneficiary resulting from undue influence is void; thus, the original policy would remain in effect, and the original beneficiary's interest would vest upon the policyholder's death. See Coleman, supra
(distributing funds in accordance with the original life-insurance policy upon a showing that the change in beneficiary was void). In the present case, if John changed the beneficiary on his life-insurance policies as a result of Ruthie's undue influence over him, then the change in beneficiary would be void, and the original policy would remain in effect. Because John has died, Kimberly would hold not a mere expectancy, but a vested right in the original insurance policy, entitling her to bring the action.[2]
Thus, the rationale upon which we distinguished undue influence from mental *Page 1090 
incompetence in Coleman is flawed. Further, holding that a former beneficiary lacks standing to challenge a change of beneficiary brought about by a third party's exertion of undue influence would effectively insulate a wrongdoer's bad act. See § 13, Ala. Const. 1901 ("every person, for any injury done him . . . shall have a remedy by due process of law. . . .").
We also note that "a substantial majority of the other states which have addressed this issue have affirmed the right of a former beneficiary to attack a change of beneficiary on the basis of undue influence." Cobb v. Justice,954 S.W.2d 162, 167 (Tex.App. 1997) (footnote omitted).[3] "`By the majority rule, where a change of beneficiary has been accomplished by . . . undue influence practiced by the substitute beneficiary, the rights of the original beneficiary are not cut off by the attempted substitution. Equity may entertain jurisdiction of a suit by an original beneficiary to set aside a change to a substituted beneficiary on the ground of . . . undue influence and to enjoin the payment of the polic[y] to the latter.'" 954 S.W.2d at 167-68 (quoting 4 Lee R. Russ and Thomas F. Segalla, Couch on Insurance
§ 60:72, at 60-132 to 60-134 (3d ed. 1996)).
We will no longer apply a rule that lacks an adequate foundation and rationale. To the extent that Coleman,Taylor v. Southern Bank Trust Co., 227 Ala. 565,151 So. 357 (1933), Barnett, and other Alabama cases hold that a former beneficiary is precluded from challenging, on the basis of undue influence, a change by the deceased insured of the beneficiary of an insurance policy, they are hereby overruled.
 Conclusion
We reverse the trial court's summary judgment in favor of Ruthie Cunningham, and we remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
MURDOCK, J., recuses himself.*
[1] The complete sentence in Taylor reads: "And we have held (illustrative of the expectant character of such an interest) that fraud or undue influence inducing the insured to change the beneficiary, the right to change being reserved, does not give the first beneficiary any right to claim the proceeds of the policy."
[2] Even in those situations where the original beneficiary is ultimately unable to prove that the policyholder was unduly influenced, the idea that a former beneficiary holds a "mere" expectancy and thus lacks standing to sue fails to take into account the interest the original beneficiary does hold in the policy: Professor Williston writes, "Where the policy reserves to the insured a power to change the beneficiary, the beneficiary possesses a defeasible vested interest." This is a stronger interest than a mere expectancy. 13 Richard A. Lord,Williston on Contracts § 37:29 (4th ed. 2002). "It is generally said that the beneficiary has no more than a mere `expectancy,' in case the insured has reserved the power to change; but, even so, an assignment by the beneficiary should be held to be effective if the power to change is not exercised. The ideas behind such terms as `expectancy' and `vested rights' are altogether too variable and uncertain to justify their use as a basis for decision." 9 Corbin onContracts § 887 (Interim ed. 2002). Thus, the fact that a former beneficiary holds a "mere" expectancy does not mean that she holds no interest.
[3] In the omitted footnote, the Texas Court of Appeals identifies 14 other states that "have affirmed the right of a prior beneficiary to pursue such a suit," 8 that have not questioned the standing of the prior beneficiary, and 6, including Alabama, that have concluded that the prior beneficiary lacks standing to sue. 954 S.W.2d at 167 n. 2.
* Note from the reporter of decisions: When the opinion in this case was released on July 13, 2007, Justice Murdock was inadvertently shown as voting to concur. He actually had recused himself from the case.