THOMPSON, Presiding Judge.
On December 31, 2009, BAC Home Loans Servicing, LP (hereinafter “BAC”),[1] filed a complaint in ejectment against Bessie T. Sturdivant. Specifically, BAC alleged that it had sold at foreclosure certain property pursuant to the terms of a mortgage executed by Sturdivant, that it had purchased the property at the foreclosure *16 sale, and that Sturdivant had failed to surrender possession of the property. Sturdivant answered and denied the material allegations of the complaint.
BAC moved for a summary judgment, and Sturdivant opposed that motion. After conducting a hearing, the trial court, on October 29, 2010, entered a summary judgment in favor of BAC. The trial court also ordered that a writ of possession in favor of BAC be issued. Sturdivant filed a postjudgment motion, which the trial court denied. Sturdivant timely appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The record indicates the following relevant facts. In December 2007, Sturdivant obtained a loan from Security Atlantic Mortgage Co., Inc. (“Security Atlantic”), to purchase a home. To secure the loan, Sturdivant executed a mortgage with Mortgage Electronic Registration Systems, Inc. (“MERS”), “solely as nominee” for Security Atlantic.[2] The record indicates that the loan was insured by the Federal Housing Administration (“FHA”). A portion of the security agreement for the mortgage reads:
“This security instrument is given to Mortgage Electronic Registration Systems, Inc. (‘MERS’), solely as nominee for lender, as hereinafter defined, and lender’s successors and assigns, as beneficiary. ... For this purpose, borrower does hereby mortgage, grant and convey to MERS (solely as nominee for lender and lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in Jefferson County, Alabama.... “... Borrower understands and agrees that MERS holds only legal title to the interest granted by borrower and the security instrument; but, if necessary to comply with law or custom, MERS (as nominee for lender and lender’s successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of lender....”
Sturdivant stated in an affidavit that in March 2009 several of her family members died, that she herself became ill, and that she suffered a decrease in her income. Sturdivant testified that in March 2009 she began contacting BAC about the possibility of modifying her loan payments.
The record indicates that when Sturdi-vant did not make the loan payments due in April 2009 or May 2009, BAC sent a letter on June 8, 2009, in which it identified itself as the “servicer” of her loan. In that letter, BAC notified Sturdivant that if her default on the terms of the mortgage was not cured, the loan payments would be accelerated and the balance of the loan would be due.
BAC presented evidence indicating that in September 2009 it referred the matter to an attorney to begin the foreclosure process. The record contains two letters, each dated September 20, 2009, sent by BAC’s attorney to Sturdivant. One of the September 20, 2009, letters identified BAC as the “holder of [Sturdivant’s] mortgage,” informed Sturdivant of the total amount due under the terms of the mortgage-loan contract, and notified her of the procedures for disputing the debt. The other *17 September 20, 2009, letter from BAC’s attorney to Sturdivant notified Sturdivant that BAC, identified as the holder of the mortgage, had instructed the attorney to proceed with the foreclosure of the mortgage and that a foreclosure sale was scheduled for October 28, 2009.
BAC also submitted into evidence two communication logs generated by Neighborhood Housing Services of Birmingham, Inc. (“NHSB”), an organization that Stur-divant authorized to negotiate on her behalf with “the lender” in connection with the mortgage loan. The NHSB communication logs indicate that in late April or early May 2009 Sturdivant began the process of applying for a “work out” of her mortgage, i.e., applying for assistance regarding a modification of, or a restructuring of, the mortgage loan. The communication logs indicate that in mid September 2009 Sturdivant was informed that BAC was seeking to foreclose on the property and that Sturdivant was continuing her efforts to obtain a modification of the mortgage loan.
The foreclosure sale scheduled for October 28, 2009, was postponed until December 1, 2009, while BAC continued to review Sturdivant’s request for a modification of her loan. A November 18, 2009, entry on one of the NHSB communication logs indicates that NHSB was informed on that date that Sturdivant’s request was still under review but that the foreclosure sale remained scheduled for December 1, 2009. On December 1, 2009, NHSB entered a notation that it had been informed that Sturdivant “did not qualify for a loan mod on 11-7-2009.” An assistant vice president for BAC, Ken Satsky, stated in an affidavit that, “based upon a review of the financial information provided by Ms. Sturdivant, she did not meet the applicable guidelines” for a modification of the mortgage loan.
In his affidavit, which was submitted in support of BAC’s summary-judgment motion, Satsky said that, “[i]n my employment capacity, I am personally familiar” with Sturdivant’s mortgage account. Sat-sky’s affidavit stated that Sturdivant’s mortgage had originated with MERS, on behalf of Security Atlantic or its successors and assigns, and that foreclosure proceedings had been initiated. Satsky’s affidavit does not reference an assignment of the mortgage to BAC, and it does not indicate the identity of the entity that initiated the foreclosure proceedings. Satsky testified that Sturdivant defaulted on the note secured by the mortgage and that BAC “provided her with Notice of Default and acceleration of the debt due under said note by letter dated January 6, 2009.” The record on appeal does not contain a letter dated January 6, 2009, and Satsky’s affidavit does not refer to the September 20, 2009, letters BAC submitted to the trial court in support of its summary-judgment motion.[3]
Also in support of its summary-judgment motion, BAC submitted into evidence a statement that a notice of foreclosure had been published on November 7, 2009, in the Alabama Messenger, a “weekly newspaper of general circulation.” See § 35-10-8, Ala.Code 1975 (governing the notice required for a foreclosure sale). In that notice, BAC stated that it was the “holder of [Sturdivant’s] mortgage,” which contained a power of sale, and that BAC would sell the property on December 1, 2009, at public auction. BAC also represented in its published notice of the pro *18 posed December 1, 2009, foreclosure sale that Sturdivant had mortgaged the property to MERS, as nominee for Security Atlantic or its successors and assigns, and that “said mortgage was subsequently assigned to BAC Home Loans Servicing, LP, by instrument recorded in [the probate court].”
On December 1, 2009, the property was sold at the foreclosure sale that BAC had scheduled. BAC was the purchaser of the property at that sale. Also on December 1, 2009, MERS assigned Sturdivant’s mortgage to BAC.
In support of its motion for a summary judgment, BAC submitted to the trial court a copy of its auctioneer’s foreclosure deed, also dated December 1, 2009, which states, among other things, that MERS had assigned the mortgage to BAC, that BAC had recorded that assignment of the mortgage, and that BAC had completed other steps necessary to obtain a deed by virtue of its purchase of the property at the foreclosure sale. With regard to the assignment of the mortgage, the December 1, 2009, auctioneer’s foreclosure deed specifically states:
“WHEREAS, BESSIE T. STURDI-VANT, unmarried, executed a mortgage to Mortgage Electronic Registration Systems, Inc. [MERS], acting solely as nominee for Lender and Lender’s Successors and Assigns on the 18th day of December 2007, on that certain real property hereinafter described, which mortgage is recorded in Book LR200801, Page 21971, of the records in the Office of the Judge of Probate, Jefferson County, Alabama; which said mortgage was subsequently assigned to BAC Home Loans Servicing LP by instrument recorded in Book 200912 Page 14464 of said Probate Court records
[[Image here]]
(Emphasis added.) The “book” and “page” numbers identified in the above-quoted portion of the December 1, 2009, auctioneer’s foreclosure deed are not printed in typeface, as is the remainder of the deed. Rather, those numbers are handwritten insertions into the auctioneer’s foreclosure deed. The evidence submitted by BAC in support of its summary-judgment motion indicates that the December 1, 2009, assignment of Sturdivant’s mortgage from MERS to BAC and the December 1, 2009, auctioneer’s foreclosure deed were each first recorded in the office of the Jefferson Probate Court (“the probate court”) on December 23, 2009, and the time stamps on those documents indicate that the auctioneer’s foreclosure deed was recorded one second after the assignment.[4]
On December 4, 2009, BAC sent a letter to Sturdivant notifying her of its purchase of the property at the December 1, 2009, foreclosure sale and demanding possession of the property pursuant to § 6-5-251, Ala.Code 1975.
On appeal of the trial court’s summary judgment in favor of BAC, Sturdivant raises a number of issues; however, we find one issue to be dispositive. Sturdivant *19 contends that the summary judgment in favor of BAC was improper because, she says, BAC failed to make a prima facie showing that it had the authority to, and did, validly foreclose on the property. In its brief on appeal, BAC counters that Sturdivant did not raise before the trial court her argument that it did not validly foreclose. Therefore, it contends, Sturdi-vant cannot now assert that the deed it obtained through the foreclosure sale was invalid for that reason.
However, Sturdivant’s argument implicates the issue of standing, which involves whether the court had subject-matter jurisdiction to consider BAC’s ejectment action. See Cadle Co. v. Shabani, 950 So.2d 277, 279 (Ala.2006) (When the plaintiff “lacked standing to maintain the ejectment action, the trial court lacked subject-matter jurisdiction over th[e] case, and its resulting judgment [was] therefore void.”). Appellate courts are “ ‘ “duty bound to notice ex mero motu the absence of subject-matter jurisdiction.” ’ ” Riley v. Hughes, 17 So.3d 643, 648 (Ala.2009) (emphasis added) (quoting Baldwin Cnty. v. Bay Minette, 854 So.2d 42, 45 (Ala.2003), quoting in turn Stamps v. Jefferson Cnty. Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)). “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). The issue of a lack of standing may not be waived, and an argument concerning standing may be asserted for the first time on appeal. RLI Ins. Co. v. MLK Ave. Redev. Corp., 925 So.2d 914, 918 (Ala.2005). In fact, in an appeal from a judgment in an ejectment action, our supreme court, on its own motion, has vacated the judgment ejecting the mortgagor when the evidence demonstrated that the plaintiff did not have legal title to the property at issue and, therefore, lacked standing to bring the action. See Cadle Co. v. Shabani, supra. Accordingly, we address the issue whether BAC had standing to bring the ejectment action.
BAC’s claim for ejectment is one arising under § 6-6-280(b), Ala.Code 1975. See EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005) (the claim was one in ejectment under § 6-6-280(b), Ala.Code 1975, when the complainant alleged that it was entitled to possession of land because of its purchase of the land at a foreclosure sale and that the defendant was unlawfully detaining same); Muller v. Seeds, 919 So.2d 1174 (Ala.2005), overruled on other grounds, Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89 (Ala.2010) (same); and Earnest v. First Fed. Sav. & Loan Ass’n of Alabama, 494 So.2d 80 (Ala.Civ.App.1986) (same).
Section 6-6-280(b) provides as follows:
“(b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiffs interests in the *20 lands entitled him to recover, to be computed up to the time of the verdict.”
(Emphasis added.) Therefore, as part of its initial burden for seeking a summary judgment in its action seeking possession of the property, BAC was required to present evidence constituting a prima facie case that it had legal title or a right to possess the property.[5] See § 6—6—280(b); Cadle Co. v. Shabani, 950 So.2d at 279 (“In order to maintain an action for ejectment, a plaintiff must allege either possession or legal title, and the ‘action must be commenced in the name of the real owner of the land or in the name of the person entitled to possession thereof....’ § 6-6-280, Ala.Code 1975.”); and MacMillan Bloedell, Inc. v. Ezell, 475 So.2d 493, 496-97 (Ala.1985). See also. Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass’n, 947 So.2d 1031, 1041 n. 10 (Ala.2006) (“ ‘Legal title’ is defined as ‘[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest.’ Black’s Law Dictionary 1523 (8th ed.2004).”).
In explaining the nature of a claim in ejectment asserted under § 6-6-280(b), our supreme court has explained:
“The ... form of action prescribed in subsection (b) [of § 6-6-280] is, in effect, an action of ejectment as at common law, only stripped of the cumbersome forms and fictions which are characteristic of that form of action. Lomb v. Pioneer Savings & Loan Co., 106 Ala. 671, 17 So. 670 (1895). It is possessory in nature, as is its common law counterpart. Therefore, it remains incumbent upon the plaintiff to prove a right to possession at the time of the . commencement of the action. State v. Broos, 257 Ala. 690, 60 So.2d 843 (1952); Betz v. Mullin, 62 Ala. 365 (1878); Salter v. Fox, 191 Ala. 34, 67 So. 1006 (1915). The plaintiff may allege and prove that he either has the legal title to, or was possessed of, the land and that the defendant entered thereupon and unlawfully withholds and detains it. Atlas Subsidiaries of Florida, Inc. v. Kornegay, 288 Ala. 599, 264 So.2d 158 (1972).
“As at common law, the plaintiff must prevail on the strength of his own legal title or claim to possession and not on the weakness of the defendant’s. Miller v. Jones, 280 Ala. 612, 196 So.2d 866 (1967). Although he may, the defendant is not required to show legal title or a right to possession in himself. Therefore, even against one with no title or right to possession, the plaintiff cannot prevail unless he meets his burden of-proof. 25 Am.Jur.2d Ejectment § 19 (1966).”
MacMillan Bloedell, Inc. v. Ezell, 475 So.2d at 496-97 (emphasis added).
In this case, BAC based its claim that it had legal title to the property on the auctioneer’s foreclosure deed it received after it purchased the property at the December 1, 2009, foreclosure sale. Sturdivant challenges BAC’s assertion that it held legal title and a right to possession sufficient to support an action in ejectment; she argues that BAC lacked the authority to foreclose on her property because, at the time it initiated the foreclosure proceedings, it did not hold the mortgage and, thus, had no valid right to sell the property at foreclo *21 sure. Therefore, Sturdivant contends, the deed BAC purported to receive as a result of that foreclosure is not valid.
The mortgage Sturdivant executed contains a provision affording the holder of the mortgage a power of sale upon the mortgagor’s default. With regard to the authority to sell mortgaged property at foreclosure, § 35-10-1, Ala.Code 1975, provides:
“Where a power to sell lands is given to the grantee in any mortgage, or other conveyance intended to secure the payment of money, the power is part of the security, and may be executed by any person, or the personal representative of any person, who, by assignment or otherwise, becomes entitled to the money thus secured; and a conveyance of the lands sold under such power of sale to the purchaser at the sale, executed by the mortgagee, any assignee or other person entitled to the money thus secured, his agent or attorney, or the auctioneer making the sale, vests the legal title thereto in such purchaser....”
(Emphasis added.) Furthermore, § 35-10-9, Ala.Code 1975, provides that “[a]U sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of [statutory law governing the power of sale pursuant to the terms of a mortgage], shall be null and void,' notwithstanding any agreement or stipulation to the contrary.” (Emphasis added.)
In interpreting the predecessor to § 6-6-280(b), our supreme court explained:
“The mortgagor, or those standing in his shoes, to whom the equity of redemption has been conveyed by the mortgagor, has the undoubted right to pay the mortgage debt and lawful charges incurred incident to a proceeding to foreclose at any time before the foreclosure is perfected, and this right would be greatly embarrassed, if not entirely destroyed, if one who has a mere contingent interest in the debt, and who has not a present right to receive the payment*and discharge the mortgage, can exercise the power of foreclosure, and this is especially true where the mortgage and the debt thereby secured has been pledged to some person unknown to the mortgagor.
“The clear test of the right of an as-signee of the mortgage to exercise the power of sale under the statute is that such assignee is entitled to receive the money secured by the mortgage. Wildsmith v. Tracy et al., 80 Ala. 258 [ (1885) ]; Harton v. Little et al., 176 Ala. 267, 57 So. 851 [ (1911) ]; Johnson v. Beard, 93 Ala. 96, 9 So. 535 [ (1981) ].”
Kelly v. Carmichael, 217 Ala. 534, 537, 117 So. 67, 70 (1928) (emphasis added).
Consistent with the foregoing, the security agreement for Sturdivant’s mortgage provides that, upon default by Sturdivant, MERS or Security Atlantic, or any successors or assigns of Security Atlantic, had the right under that agreement to foreclose on the property and seek its sale. Sturdivant points out that MERS had not assigned the mortgage to BAC at the time BAC initiated the foreclosure proceedings. Therefore, she asserts, BAC lacked the authority to foreclose under either the terms of the security agreement for the mortgage or under § 35-10-1.
In support of its motion for a summary judgment in the ejectment action, BAC presented evidence indicating that it was assigned the mortgage on December 1, 2009, the same date it obtained the deed to the property as a result of the foreclosure sale it had initiated.[6] The evidence is un *22 disputed, however, that when BAC demanded payment from Sturdivant for the mortgage in June 2009, when it asked its attorney to initiate foreclosure proceedings in September 2009, and when it first published the notice of foreclosure sale on November 7, 2009,.BAC did not hold the mortgage, and it was not a successor or an assignee of MERS or Security Atlantic. Thus, the evidence establishes that, at the time BAC initiated foreclosure proceedings pertaining to Sturdivant’s mortgage, it was not “entitled to receive the money secured by the mortgage.” Kelly v. Carmichael, 217 Ala. at 587, 117 So. at 70. In other words, BAC did not have the power of foreclosure or the authority to foreclose on the property, and, therefore, the deed it obtained after the December 1, 2009, foreclosure sale was invalid. § 35-10-9.
This case is distinguishable from recent ejectment cases in which factual questions regarding the validity of a foreclosure sale were raised. In Hawkins v. LaSalle Bank, N.A., 24 So.3d 1143 (Ala.Civ.App.2009), overruled, Berry v. Deutsche Bank National Trust Co., 57 So.3d 142 (Ala.Civ.App.2010), a mortgagee foreclosed on three parcels of property, including one on which the mortgagor lived. The mortgagor defended the mortgagee’s ejectment action by contending that the foreclosure was invalid because the three parcels were sold collectively rather than separately, which, the mortgagor argued, impaired his ability to redeem the parcel on which he resided. This court agreed with the mortgagor’s argument on appeal, holding that the mortgagor “presented a genuine issue of material fact [that] precluded] summary judgment by presenting substantial evidence indicating that he would lose his housing and that the foreclosure sale en masse hampered his ability to redeem the subject property.” 24 So.3d at 1151. This court, citing § 6—6—280(b) and Cadle Co. v. Shabani, supra, held that if, at trial, the evidence indicated that the foreclosure sale and resulting deed were invalid, the mortgagee would not have standing to prosecute its ejectment action. Hawkins v. La-Salle Bank, 24 So.3d at 1151.
However, in Berry v. Deutsche Bank National Trust Co., supra, this court stated that such factual questions regarding the validity of the foreclosure sale did not implicate the plaintiffs standing to maintain an action in ejectment. In Berry, supra, the mortgagee foreclosed on the property and sought to eject the mortgagors. The mortgagors argued that the foreclosure sale upon which the mortgagee based its claim to legal title to the property was invalid because, they claimed, the amount the mortgagee paid to purchase the property at foreclosure was so inadequate as to shock the conscience. This court held that the mortgagors’ defense,
“[i]f satisfactorily proven at trial, ... [could] justify a determination that the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the market value of the property as to shock the conscience,, which would constitute an affirmative defense to [the mortgagee’s] ejectment claim.”
Berry v. Deutsche Bank Nat’l Trust Co., 57 So.3d at 149 (emphasis added). In Berry, supra, this court clarified that eviden-tiary proof of irregularities in foreclosure proceedings or a foreclosure sale that calls into question the validity of the deed based on that sale constitutes an affirmative defense to the ejectment action and that such factual questions do not invalidate the standing of the plaintiff to prosecute the ejectment action. Thus, Berry overruled Hawkins v. LaSalle Bank, supra, to the *23 extent that Hawkins held that such evidence could deprive the ejectment plaintiff of standing. Berry v. Deutsche Bank Nat’l Trust Co., 57 So.3d at 149-50.
We conclude that Berry, supra, is consistent with Cadle Co. v. Shabani, supra, on which this court relied in Hawkins, supra. In Cadle Co. v. Shabani, supra, American Express Travel Related Services Co., Inc. (“AMEX”), had obtained a judgment against Shabani that it later assigned to the Cadle Company. The 10-year statutorily prescribed period in which to enforce the judgment expired and The Cadle Company did not seek to revive the original judgment. Shabani purchased property and executed a mortgage in favor of Am-South Bank. After The Cadle Company’s judgment lien had expired, Shabani’s property was sold at a sheriffs sale, and AMEX purchased the property at that sale. The Cadle Company sought to eject Shabani. The trial court entered a judgment determining that Shabani owned the property subject to the AmSouth mortgage and that The Cadle Company and AMEX had no interest in the property by virtue of the invalidity of the sheriffs sale. Our supreme court, on its own motion, vacated the trial court’s judgment after determining that because The Cadle Company lacked legal title to the property, it also lacked standing to bring the ejectment action. In determining that The Cadle Company lacked standing, the court stated that the sheriffs deed had been in favor of AMEX and there was no evidence of a transfer or assignment of the sheriffs deed from AMEX to The Cadle Company. The court determined that, “[bjecause The Cadle Company lacked standing to maintain the ejectment action, the trial court lacked subject-matter jurisdiction over th[e] case, and its resulting judgment [was] therefore void.” Cadle Co. v. Shabani, 950 So.2d at 279. See also Ex parte McKinney, 87 So.3d 502, 516 (Ala.2011) (our supreme court again concluded that, because the plaintiff in the ejectment action could not demonstrate legal title to the property at issue, “under the authority of Cadle, he lacks the standing necessary to prosecute his ejectment claim”).[7]
.We find the issue in this case to be distinguishable from the issue in Berry, supra. In this case, the issue is not whether there has been some irregularity that creates a factual question involving the propriety or fairness of the foreclosure proceedings or the foreclosure sale, as was the issue in Berry. Rather, this case is similar to Cadle Co. v. Shabani, supra. In that case, The Cadle Company claimed it held title to and a right to possession of the property, but the evidence indicated that The Cadle Company did not have title to the property through which it could also claim a right to possession of the property.
As previously discussed, because the record demonstrates that BAC did not have legal title to the property at the time it initiated its foreclosure action, it cannot claim legal title to the property through *24 the December 1, 2009, foreclosure sale and the resulting deed. Therefore, BAC did not have standing to bring the ejectment action. § 6 — 6—280(b); and Cadle Co. v. Shabani, 950 So.2d at 279.
A judgment entered in an action commenced by a party lacking standing is a nullity. Vann v. Cook, 989 So.2d 556, 559 (Ala.Civ.App.2008); see also Blevins v. Hillwood Office Ctr. Owners’ Ass’n, 51 So.3d 317, 321 (Ala.2010) (same). Because' BAC lacked standing to bring the ejectment action, the trial court never acquired subject-matter jurisdiction over this dispute. Accordingly, the summary judgment is void and is hereby vacated. Blevins, 51 So.3d at 321; and Cadle Co., 950 So.2d at 280. Additionally, because a void judgment will not support an appeal, Gallagher Bassett Servs., Inc. v. Phillips, 991 So.2d 697, 701 (Ala.2008), this appeal must be dismissed for lack of subject-matter jurisdiction. Blevins, 51 So.3d at 323.
For the reasons set forth above, the trial court’s summary judgment is vacated and the appeal is dismissed
JUDGMENT VACATED; APPEAL DISMISSED.
MOORE, J., concurs specially, which THOMAS, J., joins.
PITTMAN and BRYAN, JJ., dissent, with writings.

. On July 1, 2011, BAC merged into Bank of America, N.A., and Bank of America became a successor by merger to BAC. Because BAC was the name used by the entity involved in the transactions at issue in this case, we will continue to use "BAC," rather than "Bank of America," throughout this opinion.

. The definition of "nominee” includes:
"2. A person designated to act in place of another, usu. in a very limited way. 3. A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others.”
Black's Law Dictionary, 1149 (9th ed.2009).

. There is no evidence in the record on appeal pertaining to a default occurring in or before January 2009. The documents submitted by BAC indicate that Sturdivant failed to make mortgage payments in April and May 2009.

. We note that there is no statutory requirement in Alabama that an assignment of a mortgage be recorded in a probate office before an assignee may institute foreclosure proceedings. Regardless, BAC did not submit to the trial court evidence, nor has it asserted an argument to this court, explaining why the December 1, 2009, auctioneer’s foreclosure deed awards it title to the property based, in part, upon an assignment "recorded” in the probate court on December 23, 2009, more than three weeks after the execution of the December 1, 2009, auctioneer’s foreclosure deed. Similarly, BAC represented in its November 2009 published notice in the Alabama Messenger that it had the authority to foreclose on Sturdivant’s mortgage because it had been assigned Sturdivant’s mortgage and had recorded that assignment in the probate court.

. Recently, in Steele v. Federal National Mortgage Association, 69 So.3d 89, 93-94 (Ala.2010), our supreme court held that § 6-6-280 does not require that a plaintiff in an ejectment action make a demand for possession of the property before filing an action under that section. In so holding, the court in Steele overruled Muller v. Seeds, 919 So.2d 1174 (Ala.2005), and several other cases to the extent that those cases held that a demand for possession was required to maintain an ejectment action under § 6-6-280.

. The record on appeal does not indicate whether the mortgage was assigned to BAC *22 before or after the foreclosure sale took place.

. We note that, in a footnote in Ex parte McKinney, supra, our supreme court indicated that the concepts of standing and real party in interest might have been blurred in the precedent holding that the failure to hold legal title may implicate standing in an ejectment action. Ex parte McKinney, 87 So.3d at 509 n.7. However, in that case, our supreme court continued to adhere to the precedent established in Cadle Co. v. Shabani, supra, that the failure to demonstrate legal title to property divests a plaintiff in an ejectment action of standing to assert its claim. Accordingly, this court must follow that precedent. § 12-3-16, Ala.Code 1975 ("The decisions of the Supreme Court shall govern the holdings and decisions of the courts of appeals... ."); Farmers Ins. Exch. v. Raine, 905 So.2d 832, 835 (Ala.Civ.App.2004) ("Although the supreme court might choose to revisit this issue, this court is bound by precedent_”).