Rel: August 22, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

_____

### SC-2025-0196
_____

**Truman Glasscock III**

**v.**

**Theresa Glasscock**

**Appeal from Morgan Circuit Court**
**(CV-22-900293)**

LEWIS, Justice.

Truman Glasscock III ("Truman III") appeals from a summary

judgment entered by the Morgan Circuit Court ("the trial court") in favor

of Theresa Glasscock regarding the funds in an account at Redstone Federal Credit Union ("RFCU"). We reverse the summary judgment and remand the cause to the trial court for proceedings consistent with this opinion.

## Procedural History

On September 15, 2022, Truman III filed a complaint against Theresa, asserting claims of unjust enrichment, fraud, conversion, and theft. In his complaint, Truman III alleged:

> "4. Truman … III is the son of Truman Glasscock, Jr., who[] is now deceased.
>
> "5. Truman Glasscock, Jr.[,] married Theresa … on July 7, 2020, in Morgan County, Alabama.
>
> "6. Truman Glasscock, Jr.[,] maintained bank accounts with [RFCU]. Truman Glasscock, Jr.[,] never added Theresa … as a signature or joint owner to any of his accounts at RFCU. Furthermore, Truman Glasscock, Jr.[,] and Theresa … did not possess any joint financial accounts.
>
> "7. Truman Glasscock, Jr.[,] possessed a checking account with RFCU that was payable upon death to … Truman … III. Said checking account maintained an average balance of $300,000.00. Under the terms of the RFCU account, the entire balance of the account was to be paid to Truman … III upon the death of Truman Glasscock, Jr.
>
> "8. Truman Glasscock, Jr.[,] was diagnosed with cancer in 2021 and ultimately passed away on September 13, 2021, after being in a coma for several days at UAB Hospital.

2

"9. Shortly after the passing of Truman Glasscock, Jr., Truman … III[] was contacted by RFCU notifying him that he was the recipient of his father's payable on death checking account. However, at the time of his father's death, the account only contained approximately $3,000.

"10. … Truman … III reviewed the record of his father's checking account and noticed several large withdrawals from his father's checking account in early September of 2021. In fact, over the course of a three (3) day period just a week before Truman Glasscock, Jr.'s death, roughly $282,000 was withdrawn from his account. These withdrawals were made by … Theresa ….

"11. Additionally, … Theresa … wrote a check to Serra Toyota for a cash purchase of a vehicle in the amount of $30,754.97 on August 30, 2021, by forging Truman Glasscock, Jr.'s signature.

"12. … Truman … III alleges that … Theresa … wrongly accessed Truman Glasscock, Jr.'s checking account via online banking, which she did not have access to, and withdrew approximately $300,000.00 and misappropriated these funds for her personal use."

On October 19, 2022, Theresa filed an answer denying all the material allegations of Truman III's complaint. On October 17, 2024, Theresa filed a motion for a summary judgment, arguing that Truman III lacked standing to pursue his claims. Theresa specifically argued that Truman III "did not have legal title to the funds at the time of the conversion" and thus "has no standing to bring any cause of action upon

it." Further, Theresa argued that, "[w]ithout standing, [the trial court] lacks jurisdiction to enter a judgment in this cause." On January 8, 2025, Truman III filed a response in opposition to the summary-judgment motion.

On March 13, 2025, the trial court granted the summary-judgment motion filed by Theresa. Truman III filed his notice of appeal with this Court on March 26, 2025.

## Standard of Review

"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004)."

Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038 (Ala. 2004).

## Discussion

On appeal, Truman III argues that the trial court improperly granted Theresa's motion for a summary judgment. Specifically, Truman III argues that "[s]ince Truman Glasscock, Jr.'s … accounts were designated as 'payable[-]on[-]death' accounts, the sums of money in

4

[Truman] Glasscock[, Jr.'s] financial accounts at [RFCU] would have passed to his payable[-]on[-]death beneficiary" and that, since Truman III is listed as the only payable-on-death beneficiary, he is "the only person entitled to bring any action regarding the financial accounts at [RFCU]." Truman III's brief, p. 18. Truman III cites, among several other cases, this Court's decision in Ex parte Estelle, 982 So. 2d 1086 (Ala. 2007), in support of his argument that Theresa "acted fraudulently by secretly taking money out of the payable[-]on[-]death beneficiary account" and, thus, "effectively nullified Truman Glasscock, Jr.'s financial planning tools, which had been in place for over twenty years." Truman III's brief, p. 27.

In Estelle, before his death, John Estelle maintained three life-insurance policies; he named his daughter, Kimberly, as the beneficiary of two of the policies, and he named his landlord, Ruthie, who assisted John with his banking, as the beneficiary of the third policy. Id. at 1087. Several years after naming Kimberly as the beneficiary of two policies, John changed the beneficiary designation on those two policies from Kimberly to Ruthie, making Ruthie the beneficiary of all three policies. Id. After John's death, Kimberly sued Ruthie alleging that Ruthie

"induced John to change the designation of beneficiary on the policies through fraud and undue influence." Id. After denying the allegations of fraud and undue influence, Ruthie filed a motion for a summary judgment, which was granted by the trial court. Id. Kimberly appealed the trial court's judgment to the Alabama Court of Civil Appeals; the Court of Civil Appeals affirmed the trial court's judgment and held that, "because Kimberly's interest as an original beneficiary under the policies was a mere expectancy, Kimberly lacked standing to assert the claims of fraud and undue influence against Ruthie." Id. at 1088. Kimberly then petitioned this Court for a writ of certiorari.

This Court granted certiorari review, reversed the Court of Civil Appeals' decision affirming the trial court's summary judgment in favor of Ruthie, and remanded the case for further proceedings. In doing so, this Court overruled long-standing precedent holding "that a former beneficiary is precluded from challenging, on the basis of undue influence, a change by the deceased insured of the beneficiary of an insurance policy." Id. at 1090. Further, relying on Article I, § 13, of the Constitution of Alabama ("[E]very person, for an injury done him, … shall have a remedy by due process of law …."), this Court reasoned that

6

"holding that a former beneficiary lacks standing to challenge a change of beneficiary brought about by a third party's exertion of undue influence would effectively insulate a wrongdoer's bad act." Id. (emphasis added).

We find the rationale of Estelle to be applicable to claims brought by a beneficiary of a payable-on-death account. Similar to the undue-influence claim asserted by the daughter against a third party in Estelle, in this case Truman III has asserted claims of unjust enrichment, fraud, conversion, and theft against Theresa arising from her transfer of the funds in the RFCU pay-on-death account in the name of Truman Glasscock, Jr. ("Truman Jr."). Section 5-24-12(b)(2), Ala. Code 1975, provides that, when an account holds a payable-on-death designation, "[o]n the death of the sole party or the last survivor of two or more parties, sums on deposit belong to the surviving beneficiary or beneficiaries." Here, it is undisputed that Truman Jr. was the only named party on the RFCU account, but Truman III was designated as the payable-on-death beneficiary. Pursuant to § 5-24-12(b)(2), Truman III became the sole owner of the RFCU account upon the death of Truman Jr. on September 13, 2021. Because Truman III's interest had vested by the time of filing his initial complaint on September 15, 2022, Truman III was the proper

7

party to bring suit against Theresa for wrongful acts alleged to have been committed against Truman Jr. See Ex parte McKinney, 87 So. 3d 502, 510 (Ala. 2011) (recognizing that "'[s]tanding is "'"[t]he requisite personal interest that must exist at the commencement of the litigation"'"'"(citations omitted)). For this Court to hold otherwise would "effectively insulate a[n alleged] wrongdoer's bad act." Estelle, 982 So. 2d at 1090.

Theresa argues that the trial court's summary judgment should be affirmed because Truman III lacks standing to bring the present action. Specifically, Theresa argues that Truman III has failed to meet certain elements of the claims brought against her. However, in Ex parte BAC Home Loans Servicing, LP, 159 So. 3d 31, 46 (Ala. 2013), this Court overruled precedent holding "that a plaintiff in an … action lacks 'standing' if it cannot prove one of the elements of its claim … and that the trial court in turn lacks subject-matter jurisdiction over that claim." In doing so, this Court reasoned that

> "the concept of standing was developed by the United States Supreme Court for 'public law' cases, see, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), not 'private law' cases. In the absence of defined elements as exist in established private causes of action, the concept of standing is used to differentiate between

8

those complaints regarding governmental action that are shared generally by the citizenry and that therefore must be addressed politically and those complaints that reflect a sufficient specific injury and consequent adverseness to make for a 'case' that is within the purview of the judicial branch. … In private-law actions (e.g., a claim of negligence or, as here, a statutory claim for ejectment), if the elements are met, the plaintiff is entitled to judicial intervention; if they are not met, then the plaintiff is not entitled to judicial intervention. Everything necessary to justify judicial intervention, by definition, inheres in those elements that we say constitute a 'cause of action' in and by our courts. … At a very fundamental level, the concept of standing is already embodied in the various elements prescribed, including the common requirement of proof of a sufficient existing or threatened injury."

Id. at 44. Further, this Court stated:

"If in the end the facts do not support the plaintiffs, or the law does not do so, so be it--but this does not mean the plaintiffs cannot come into court and allege, and attempt to prove, otherwise. If they fail in this endeavor, it is not that they have a 'standing' problem[;] it is, as Judge Pittman recognized in Sturdivant[ v. BAC Home Loans Servicing, LP, 159 So. 3d 15 (Ala. Civ. App. 2011)], that they have a 'cause of action' problem, or more precisely in these cases, a 'failure to prove one's cause of action' problem. The trial court has subject-matter jurisdiction to 'hear' such 'problems'--and the cases in which they arise."

Id. at 46. Here, as discussed in BAC, even if Truman III fails to meet the elements of the claims brought against Theresa, he would have a "'failure to prove one's cause of action' problem," not a "standing"

9

problem, and "[t]he trial court has subject-matter jurisdiction to 'hear' such [failure-of-proof] 'problems.'" Id.

Theresa also relies on this Court's decision in Fletcher v. Eddins, 392 So. 3d 17 (Ala. 2023), for the proposition that "[a] beneficiary of a payable-on-death … account has no legal right to the funds during the lifetime of the account holder." Theresa's brief, p. 11. Specifically, Theresa argues that Truman III "had no legal interest in the funds [in the RFCU account] at the time of the alleged transfers, and, therefore, his claims must fail as a matter of law." Id.

In Fletcher, Edwyna Ivey transferred funds from several accounts that had been held jointly by her and her deceased husband, R.E. Ivey, into new accounts; Edwyna named herself as the party to the new accounts and listed R.E.'s children as beneficiaries to the accounts. This Court noted that documentation related to the new accounts indicated that the new accounts were set up as payable-on-death accounts. Fletcher, 392 So. 3d at 28. R.E.'s children brought claims against Edwyna, alleging conversion and breach of trust in relation to the removal of the jointly held funds into accounts that designated R.E.'s children as payable-on-death beneficiaries. This Court held that Edwyna

10

was the only person with a present right to the money in the new accounts and, that pursuant to § 5-24-11(c), Ala. Code 1975, as beneficiaries of the new accounts, R.E.'s children had "'no right to sums on deposit during the lifetime of any party.'" Id. at 30 (quoting § 5-24-11(c)). As a result, this Court reversed the portion of the trial court's order granting R.E.'s children relief on their claims "[b]ecause [R.E.'s children] … failed to demonstrate that they had a present right to the funds in the accounts at issue." Id.

We find Fletcher to be distinguishable from the present case. Unlike the original accounts in Fletcher, which were held jointly by R.E. and Edwyna, the RFCU account in this case was held solely by Truman Jr., and Truman III was listed as the payable-on-death beneficiary. Therefore, unlike in Fletcher, Truman III's interest in the RFCU account vested at the time Truman Jr. died, making Truman III the sole owner of the RFCU account and, thus, the proper party to bring suit against Theresa.

## Conclusion

Based on the foregoing, we conclude that the trial court erred in entering a summary judgment in favor of Theresa on the basis that

11

Truman III lacked standing. Therefore, we reverse the summary judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, C.J., and Wise, Sellers, and Cook, JJ., concur.