After Remand from the Supreme Court

THOMPSON, Presiding Judge.
The facts of this case, as set forth in an earlier opinion of this court, are as follows:
“On December 31, 2009, BAC Home Loans Servicing, LP (hereinafter ‘BAC’), filed a complaint in ejectment against Bessie T. Sturdivant. Specifically, BAC alleged that it had sold at foreclosure certain property pursuant to the terms of a mortgage executed by Sturdivant, that it had purchased the property at the foreclosure sale, and that Sturdivant had failed to surrender possession of the property. Sturdivant answered and denied the material allegations of the complaint.
“BAC moved for a summary judgment, and Sturdivant opposed that motion. After conducting a hearing, the trial court, oh October 29, 2010, entered a summary judgment in favor of BAC. The trial court also ordered that a writ *49 of possession in favor of BAC be issued. Sturdivant filed a postjudgment motion, which the trial court denied. Sturdivant timely appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“The record indicates the following relevant facts. In December 2007, Stur-divant obtained a loan from Security Atlantic Mortgage Co., Inc. (‘Security Atlantic’), to purchase a home. To secure the loan, Sturdivant executed a mortgage with Mortgage Electronic Registration Systems, Inc. (‘MERS’), ‘solely as nominee’ for Security Atlantic. The record indicates that the loan was insured by the Federal Housing Administration (‘FHA’). A portion of the security agreement for the mortgage reads:
“ ‘This security instrument is given to Mortgage Electronic Registration Systems, Inc. (“MERS”), solely as nominee for lender, as hereinafter defined, and lender’s successors and assigns, as beneficiary.... For this purpose, borrower does hereby mortgage, grant and convey to MERS (solely as nominee for lender and lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in Jefferson County, Alabama....
“ ‘... Borrower understands and agrees that MERS holds only legal title to the interest granted by borrower and the security instrument; but, if necessary to comply with law or custom, MERS (as nominee for lender and lender’s successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of lender....’
“Sturdivant stated in an affidavit that in March 2009 several of her family members died, that she herself became ill, and that she suffered a decrease in her income. Sturdivant testified that in March 2009 she began contacting BAC about the possibility of modifying her loan payments.
“The record indicates that when Stur-divant did not make the loan payments due in April 2009 or May 2009, BAC sent a letter on June 8, 2009, in which it identified itself as the ‘servicer’ of her loan. In that letter, BAC notified Stur-divant that if her default on the terms of the mortgage was not cured, the loan payments would be accelerated and the balance of the loan would be due.
“BAC presented evidence indicating that in September 2009 it referred the matter to an attorney to begin the foreclosure process. The record contains two letters, each dated September 20, 2009, sent by BAC’s attorney to Sturdi-vant. One of the September 20, 2009, letters identified BAC as the ‘holder of [Sturdivant’s] mortgage,’ informed Stur-divant of the total amount due under the terms of the mortgage-loan contract, and notified her of the procedures for disputing the debt. The other September 20, 2009, letter from BAC’s attorney to Sturdivant notified Sturdivant that BAC, identified as the holder of the mortgage, had instructed the attorney to proceed with the foreclosure of the mortgage and that a foreclosure sale was scheduled for October 28, 2009.
“BAC also submitted into evidence two communication logs generated by Neighborhood Housing Services of Birmingham, Inc. (‘NHSB’), an organization that Sturdivant authorized to negotiate on her behalf with ‘the lender’ in connection with the mortgage loan. The NHSB communication logs indicate that *50 in late April or early May 2009 Sturdi-vant began the process of applying for a “work out’ of her mortgage, i.e., applying for assistance regarding a modification of, or a restructuring of, the mortgage loan. The communication logs indicate that in mid September 2009 Sturdivant was informed that BAC was seeking to foreclose on the property and that Stur-divant was continuing her efforts to obtain a modification of the mortgage loan.
“The foreclosure sale scheduled for October 28, 2009, was postponed until December 1, 2009, while BAC continued to review Sturdivant’s request for a modification of her loan. A November 13, 2009, entry on one of the NHSB communication logs indicates that NHSB was informed on that date that Sturdivant’s request was still under review but that the foreclosure sale remained scheduled for December 1, 2009. On December 1, 2009, NHSB entered a notation that it had been informed that Sturdivant ‘did not qualify for a loan mod on 11-7-2009.’ An assistant vice president for BAC, Ken Satsky, stated in an affidavit that, ‘based upon a review of the financial information provided by Ms. Sturdivant, she did not meet the applicable guidelines’ for a modification of the mortgage loan.
“In his affidavit, which was submitted in support of BAC’s summary-judgment motion, Satsky said that, ‘[i]n my employment capacity, I am personally familiar’ with Sturdivant’s mortgage account. Satsky’s affidavit stated that Sturdivant’s mortgage had originated with MERS, on behalf of Security Atlantic or its successors and assigns,' and that foreclosure proceedings had been initiated. Satsky’s affidavit does not reference an assignment of the mortgage to BAC, and it does not indicate the identity of the entity that initiated the foreclosure proceedings. Satsky testified that Sturdivant defaulted on the note secured by the mortgage and that BAC ‘provided her with Notice of Default and acceleration of the debt due under said note by letter dated January 6, 2009.’ The record on appeal does not contain a letter dated January 6, 2009, and Satsky’s affidavit does not refer to the September 20, 2009, letters BAC submitted to the trial court in support of its summary-judgment motion.
“Also in support of its summary-judgment motion, BAC submitted into evidence a statement that a notice of foreclosure had been published on November 7, 2009, in the Alabama Messenger, a ‘weekly newspaper of general circulation.’ See § 35-10-8, Ala.Code 1975 (governing the notice required for a foreclosure sale). In that notice, BAC stated that it was the ‘holder of [Sturdivant’s] mortgage,’ which contained a power of sale, and that BAC would sell the property on December 1, 2009, at public auction. BAC also represented in its published notice of the proposed December 1, 2009, foreclosure sale that Sturdivant had mortgaged the property to MERS, as nominee for Security Atlantic or its successors and assigns, and that ‘said mortgage was subsequently assigned to BAC Home Loans Servicing, LP, by instrument recorded in [the probate court].’
“On December 1, 2009, the property was sold at the foreclosure sale that BAC had scheduled. BAC was the purchaser of the property at that sale. Also on December 1, 2009, MERS assigned Sturdivant’s mortgage to BAC.
“In support of its motion for a summary judgment, BAC submitted to the trial court a copy of its auctioneer’s foreclosure deed, also dated December 1, 2009, which states, among other things, that MERS had assigned the mortgage *51 to BAC, that BAC had recorded that assignment of the mortgage, and that BAC had completed other steps necessary to obtain a deed by virtue of its purchase of the property at the foreclosure sale. With regard to the assignment of the mortgage, the December 1, 2009, auctioneer’s foreclosure deed specifically states:
“WHEREAS, BESSIE T. STUR-DIVANT, unmarried, executed a mortgage to Mortgage Electronic Registration Systems, Inc. [MERS], acting solely as nominee for Lender and Lender’s Successors and Assigns on the 18th day of December 2007, on that certain real property hereinafter described, which mortgage is recorded in Book LR200801, Page 21971, of the records in the Office of the Judge of Probate, Jefferson County, Alabama; which said mortgage was subsequently assigned to BAC Home Loans Servicing LP by instrument recorded in Book 200912 Page 14464 of said Probate Court records_’
“(Emphasis added.) The ‘book’ and ‘page’ numbers identified in the above-quoted portion of the December 1, 2009, auctioneer’s foreclosure deed are not printed in typeface, as is the remainder of the deed. Rather, those numbers are handwritten insertions into the auctioneer’s foreclosure deed. The evidence submitted by BAC in support of its summary-judgment motion indicates that the December 1, 2009, assignment of Sturdivant’s mortgage from MERS to BAC and the December 1, 2009, auctioneer’s foreclosure deed were each first recorded in the office of the Jefferson Probate Court (‘the probate court’) on December 23, 2009, and the time stamps on those documents indicate that the auctioneer’s foreclosure deed was recorded one second after the assignment.
“On December 4, 2009, BAC sent a letter to Sturdivant notifying her of its purchase of the property at the December 1, 2009, foreclosure sale and demanding possession of the property pursuant to § 6-5-251, Ala.Code 1975.”
Sturdivant v. BAC Home Loans Servicing, LP, 159 So.3d 15, 15-18 (Ala.Civ.App. 2011) (footnotes omitted), rev’d, Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31 (Ala.2013).
In Sturdivant, supra, this court, relying on precedent from our supreme court, held that because Sturdivant’s mortgage had not been assigned to BAC at the time BAC initiated the foreclosure proceedings, BAC did not have the right to conduct the foreclosure sale and, therefore, lacked standing to prosecute its ejectment action. Id. Accordingly, this court pretermitted the discussion of the other issues raised in Sturdivant’s brief on appeal.
BAC filed a petition for a writ of certio-rari to our supreme court, which consolidated the action with another action with similar facts. Our supreme court held that this court erred in determining that BAC did not have standing to prosecute its ejectment action, concluding that the issue whether the foreclosing entity had valid title to or the right to possess the property was not one that impacted the subject-matter jurisdiction of the trial court. Ex parte BAC Home Loans Servicing, LP, 159 So.3d at 36. Rather, our supreme court held, those issues impacted the determination whether a foreclosing person or entity could meet each element of its cause of action in ejectment. Id. The supreme court explained:
“[BAC Home Loans Servicing, LP (‘BAC’),] attended a foreclosure auction, was the successful bidder at that auction, paid money for the auctioned property, and received a foreclosure deed to *52 the property. With deed in hand, [BAC] now brings an action under Alabama law, specifically § 6-6-280(b), Ala. Code 1975, claiming good title to the property at issue and the right to eject the original debtor. We are clear to the conclusion that the trial court[ ] had subject-matter jurisdiction over [this] cause[], including any issue as to the validity in fact of [BAC’s] title to the property, this being one of the elements of proof required in an ejectment action.
“If in the end the facts do not support [BAC], or the law does not do so, so be it — but this does not mean [BAC] cannot come into court and allege, and attempt to prove, otherwise. If [BAC] fail[s] in this endeavor, it is not that [it has] a ‘standing[1] problem, it is, as Judge Pittman recognized in Sturdivant, that [it has] a ‘cause of action’ problem, or more precisely in [this] case[], a ‘failure to prove one’s cause of action’ problem. The trial court has subject-matter jurisdiction to ‘hear’ such ‘problems’ — and the cases in which they arise. To the extent Cadle [v. Shabani, 950 So.2d 277 (Ala.2006),] holds otherwise, i.e., that a plaintiff in an ejectment action lacks ‘standing’ if it cannot prove one of the elements of its claim (namely, legal title or the right to possession of the property) and that the trial court in turn lacks subject-matter .jurisdiction over that claim — it and other cases so holding are hereby overruled.”
Ex parte BAC Home Loans Servicing, LP, 159 So.3d at 46.
On remand from our supreme court, we now reach the other issues raised by Bessie T. Sturdivant in her brief submitted to this court pertaining to whether BAC Home Loans Servicing, LP (“BAC”), was entitled to a summary judgment on its cause of action for ejectment. The standard by which this court reviews a summary judgment is well- settled:
“ ‘ “To grant [a summary-judgment] motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present ‘substantial evidence’ creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); § 12—21—12(d)[,] Ala.Code 1975. Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
‘““In our review, of a summary judgment, we apply the same standard as the trial court. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the non-movant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).” ’
“Payton v. Monsanto Co., 801 So.2d 829, 832-33 (Ala.2001) (quoting Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999)).”
Maciasz v. Fireman’s Fund Ins. Co., 988 So.2d 991, 994-95 (Ala.2008).
Sturdivant argues that the trial court erred in entering a summary judgment in favor of BAC because, she contends, BAC did not present prima facie *53 evidence in support of each element of its claim for ejectment. This court explained BAC’s claim seeking to eject Sturdivant from the property as follows:
“BAC’s claim for ejectment is one arising under § 6—6—280(b), Ala.Code 1975. See EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005) (the claim was one in ejectment under § 6-6-280(b), Ala.Code 1975, when the complainant alleged that it was entitled to possession of land because of its purchase of the land at a foreclosure sale and that the defendant was unlawfully detaining same); Muller v. Seeds, 919 So.2d 1174 (Ala.2005), overruled on other grounds, Steele v. Federal Nat'l Mortg. Ass’n, 69 So.3d 89 (Ala.2010) (same); and Earnest v. First Fed. Sav. & Loan Ass’n of Alabama, 494 So.2d 80 (Ala.Civ.App.1986) (same).
“Section 6-6-280(b) provides as follows:
“ ‘(b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiffs interests in the lands entitled him to recover, to be computed up to the time of the verdict.’ ”
Sturdivant, 159 So.3d at 19-20 (some emphasis in original; some emphasis added).
“In order to maintain an action for ejectment, a plaintiff must allege either possession or legal title.... ” Cadle Co. v. Shabani, 950 So.2d 277, 279 (Ala.2006). In Ex parte BAC Home Loans Servicing, LP, supra, our supreme court clarified that either possession or legal title is an element of proof to be demonstrated in support of a cause of action for ejectment. See also § 6-6-280(b), Ala.Code 1975 (A complaint in ejectment “is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto.”); Ex parte McKinney, 87 So.3d 502, 507 n. 6 (Ala.2011) (“‘Ejectment may be maintained on proof of title carrying, as an element of ownership, a right to possession and enjoyment....’ Lane v. Henderson, 232 Ala. 122, 124, 167 So. 270, 271 (1936).”).
In this case, BAC alleged in its ejectment complaint that it had legal title to the property. In response, Sturdivant argued that BAC’s deed, pursuant to which BAC claimed title to the property, was void because BAC could not have validly foreclosed on the mortgage. A deed resulting from a foreclosure sale may be deemed void when, among other things, “the foreclosing entity does not have the legal right to exercise the power of sale, as for example, when that entity is neither the assignee of the mortgage ... nor the holder of the promissory note ... at the time it commences the foreclosure proceedings.” Campbell v. Bank of America, N.A., 141 So.3d 492, 495 (Ala.Civ.App. 2012). “In an ejectment action, the burden is on the plaintiff, not the defendant, *54 to prove superior title to the property in question.” Maiden v. Federal Nat’l Mortg. Ass’n, 86 So.3d 368, 376 n. 1 (Ala.Civ.App.2011).
Section 35-10-12, Ala.Code 1975, provides in part that “[w]here a power to sell lands is given in any mortgage, the power is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.” (Emphasis added.) Sturdivant argues that the foreclosure sale was invalid because, she contends, BAC was not an assignee of the mortgage and, therefore, did not have the legal right to initiate foreclosure proceedings in September 2009.
However, on the same date that it released its opinion in Ex parte BAC Home Loans Servicing, LP, supra, our supreme court also released Ex parte GMAC Mortgage, LLC, [Ms. 1110547, Sept. 13, 2013] — So.3d - (Ala.2013). In Ex parte GMAC, supra, GMAC accelerated the terms of a mortgage, gave notice of foreclosure, and scheduled a foreclosure sale. The mortgage was assigned to GMAC one day before the foreclosure sale. The mortgagors, who were defendants in GMAC’s ejectment action, challenged the validity of the foreclosure sale on the basis that GMAC had not been assigned the mortgage at the time it had initiated the foreclosure proceedings. Our supreme court held that “the validity of a foreclosure turns not on whether the foreclosing party held the mortgage and the power of sale at the time of the initiation of the foreclosure process, but on whether it held the mortgage and the power of sale ‘at the time the power of sale is executed.’ ” — So.3d at-. Thus, the court concluded, “[a]t the time GMAC Mortgage signed and delivered the foreclosure deed, it was in fact the holder of the mortgage. It had at that point the full power to exercise the power of sale so as to ‘foreclose’ the mortgagor’s rights in the land and convey those rights to itself or to another.” Ex parte GMAC, — So.3d at-.
Accordingly, we consider Sturdivant’s argument that BAC lacked the authority to foreclose because of the timing of its assignment in light of the recent holding of Ex parte GMAC, supra, and we must determine whether BAC presented a prima facie case that, at the time it foreclosed on Sturdivant’s mortgage, BAC had received an assignment of the mortgage. The record indicates that Mortgage Electronic Registration Systems, Inc. (“MERS”), assigned the mortgage to BAC on December 1, 2009. Also on December 1, 2009, BAC conducted the foreclosure sale and obtained a foreclosure deed to Sturdivant’s property. The record contains no indication as to what time the December 1, 2009, assignment occurred or when BAC conducted the foreclosure sale on December 1, 2009.[1] Although BAC might have had the assignment at the time it foreclosed, it failed to present evidence in support of that fact in its summary-judgment motion. Thus, BAC failed to present a prima facie case in support of its summary-judgment motion that it had received the December 1, 2009, assignment of Sturdivant’s mortgage before it foreclosed on the property on December 1, 2009. Accordingly, we conclude that BAC was not entitled to a summary judgment on the basis of having demonstrated that it had been assigned Sturdivant’s mortgage at the time it foreclosed.
*55 However, under § 35-10-2, Ala. Code 1975, BAC might “otherwise” become entitled to foreclose. This court has held that under § 35-10-12 any person or entity who, before initiating foreclosure proceedings, becomes a holder of a promissory note secured by a mortgage and thereby is entitled to the payment of the mortgage debt may validly foreclose upon a borrower’s default. Perry v. Federal Nat’l Mortg. Ass’n, 100 So.3d 1090, 1094 (Ala.Civ.App.2012). The parties have not addressed in their briefs submitted to this court whether BAC was a holder of the promissory note secured by Sturdivant’s mortgage at the time BAC initiated the foreclosure proceedings. However, an appellate court may affirm a judgment that is correct for any reason. Ex parte Shelby Cnty. Health Care Auth., 850 So.2d 332, 339 (Ala.2002) (“[T]his Court will affirm a properly entered summary judgment, even if the trial court’s reasons for entering the judgment were incorrect.”). For that reason, this court addresses the issue whether the evidence would support a conclusion that BAC presented a prima facie case that it was entitled to a summary judgment on the basis that it was a holder of the note at the time it foreclosed on the property.
In Alabama, a note secured by a mortgage is a negotiable instrument. Thomas v. Wells Fargo Bank, N.A., 116 So.3d 226, 233 (Ala.Civ.App.2012). A holder of a note secured by a mortgage is entitled to enforce the terms of the note. Perry v. Federal Nat’l Mortg. Ass’n, 100 So.3d at 1094.[2] This court has explained:
“In Harton v. Little, 176 Ala. 267, 270, 57 So. 851, 851 (1911), our supreme court held that ‘[i]t is not at all necessary that a mortgage deed be assigned in order to enable the owner of the debt to foreclose under a power of sale.’
“ ‘The power of sale is a part of the security, and may be exercised by an assignee, or any person who is entitled to the mortgage debt. And a transfer of the debt, by writing or by parol, is in equity an assignment of the mortgage.’
“176 Ala. at 270, 57 So. At 851-52 (citations omitted). See also Ala.Code 1975, § 8-5-24 (‘the transfer of a ... note given for the purchase money of lands, whether the transfer be by delivery merely or in writing, expressed to be with or without recourse on the transfer- or, passes to the transferee the hen of the vendor of the liens.’) See generally Restatement (Third) of Property: Mort mortgage also transfers the mortgage unless the parties to the transfer agree otherwise’).”
Perry v. Federal Nat’l Mortg. Ass’n, 100 So.3d at 1095.
In Coleman v. BAC Servicing, 104 So.3d 195, 203 (Ala.Civ.App.2012), this court reiterated that “[t]he promissory note evidencing that debt was a bearer instrument that could be transferred in two ways: by delivery of possession or by written assignment.” (Citing § 8-5-24, Ala.Code 1975.) In that case, although it had not received an assignment of the mortgage at issue, the foreclosing entity had possession of the note secured by the mortgage; therefore, this court held that the foreclosing entity was entitled to enforce the note and foreclose on the mortgage. In so holding, this court explained that “ ‘[t]he note is symbolic of the debt, and the physical posses *56 sion of the note governs over any other indicium of its ownership.’ ” Coleman, 104 So.3d at 204 (quoting Restatement (Third) of Property: Mortgages § 5.4(c), cmt. following illus. 7 (Tentative Draft No. 5, March 18, 1996)).
In Nelson v. Federal National Mortgage Association, 97 So.3d 770 (Ala.Civ.App. 2012), the record indicated that Flagstar Bank, FSB, was the entity that had the rights to service a mortgage loan on behalf of the mortgagee or note holder. MERS, as nominee for Flagstar, foreclosed on the property and obtained a foreclosure deed, which it then transferred to the Federal National Mortgage Association (“Fannie Mae”). Fannie Mae, relying on the foreclosure deed it received from Flagstar, sought to eject the mortgagors, the Nelsons. In opposing Fannie Mae’s ejectment action, the Nelsons argued that the foreclosure deed was invalid. It was undisputed that the mortgage at issue had not been assigned to MERS or Flagstar at the time that MERS, on behalf of Flagstar, initiated the foreclosure proceedings, and, therefore, based on decisions pre-dating Ex parte GMAC, supra, the foreclosure sale could not be said to be valid based on a timely assignment. Nelson, supra.
However, in that case, this court concluded that, in its summary-judgment motion in support of its ejectment claim, Fannie Mae had failed to present any evidence indicating that Flagstar was the holder of the note at the time that MERS, on behalf of Flagstar, initiated the foreclosure proceedings. Nelson, 97 So.3d at 779 (explaining that, under § 35-10-2, “the owner of the debt may foreclose on property that is the subject of a mortgage securing that debt if the owner is the holder of the promissory note at the time the owner initiates foreclosure proceedings”). This court concluded:
“The complete absence of any evidence indicating that Flagstar was the owner of the debt, i.e., the holder of the note, before June 5, 2009, when MERS, as nominee for Flagstar, invoked the power of sale in the mortgage means that MERS did not convey legal title to itself by virtue of the foreclosure deed because MERS had no authority to initiate the foreclosure proceedings. Consequently, the special warranty deed that Fannie Mae received from MERS two days after the foreclosure sale, which depended on its efficacy upon the validity of the MERS foreclosure deed, see 11 Thompson on Real Property § 94.07(b)(2)(I) at 390 (David A. Thomas 2d ed. 2002), was also void.”
Nelson, 97 So.3d at 780 (emphasis added).
In Nelson, supra, this court, relying on Sturdivant, supra, held that, as a result of the void ejectment deed, Fannie Mae lacked standing to initiate its foreclosure action against the Nelsons. Our supreme court has reversed Sturdivant and held that a foreclosing entity with a purportedly valid deed does have standing to initiate an ejectment action, but that having a valid deed at the time it initiates the ejectment action is an essential element of that cause of action. Ex parte BAC Home Loans Servicing, LP, 159 So.3d at 46 (“[T]he validity in fact of the plaintiffs’ title to the property [is] one of the elements of proof required in an ejectment action.”). In addition, our supreme court in Ex parte GMAC held that there is no requirement that the foreclosing entity have title (or be a holder of the note) until the time of foreclosure, thus negating that part of Nelson in which this court held that the foreclosing entity was required to have legal title or be in possession of the note at the time the foreclosure “process” was initiated.
*57 Accordingly, given Sturdivant’s argument concerning whether BAC met its pri-ma facie burden and given the foregoing precedent, we must determine whether BAC presented a prima facie case indicating that it was a holder of the note at the time it foreclosed. .The record indicates that BAC sent a June 8, 2009, letter to Sturdivant in which BAC stated that it “services the home loan described above on behalf of the holder of the promissory note (the ‘Noteholder’).”[3] BAC did not identify the person or entity who was the “Noteholder” referenced in that letter. In a September 20, 2009, letter from counsel for BAC, the attorney who authored the letter referred to BAC as the “holder of the above mortgage.” In another September 20, 2009, letter to Sturdivant, as well as an October 28, 2009, letter, BAC’s attorney referred to Sturdivant’s mortgage as being “held by BAC.”[4] Those statements in correspondence by an attorney, however, are unsworn representations and do not constitute evidence regarding whether BAC was a holder of the note secured by Sturdivant’s mortgage at the time of the foreclosure.
The record contains no evidence indicating if or when BAC became the holder of the note secured by the mortgage. In support of its summary-judgment motion, BAC submitted only documentary evidence, the affidavit of its attorney detailing the measures he took in initiating the foreclosure proceedings, and Satsky’s affidavit. None of those submissions sets forth evidence indicating whether BAC was merely the debt servicer for a holder of the note or whether BAC was the holder of the note by virtue of having the note in its possession.
Thus, BAC presented no evidence indicating that it was either the assignee of the mortgage or the holder of the note entitled to payment of the mortgage indebtedness at the time it foreclosed on Sturdivant’s mortgage. We must conclude that BAC failed to present a prima facie case in support of its summary-judgment’ motion that it had the authority to foreclose and, thus, had valid title to or the right to possess the property. Given BAC’s failure to present prima facie evidence of one of the elements of its claim in ejectment, we must reverse the summary judgment and remand the cause for further proceedings. See, e.g., Ross v. Wells Fargo Bank, N.A., 122 So.3d 219, 223 (Ala.Civ.App.2013) (The foreclosing entity conceded that, because of errors in the assignment of a mortgage, there existed a genuine issue of material fact regarding whether it had the authority to foreclose, and, therefore, whether it could maintain its action in ejectment.). Our resolution of these issues makes it unnecessary to address Sturdivant’s other arguments pertaining to the summary judgment.
REVERSED AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.

. According to the statement in the foreclosure deed, the sale was conducted "during the legal hours of sale” on December 1, 2009.

. We also note that Sturdivant contends that the mortgage and the note were separated. This court has held that such a separation does not render the note unenforceable. Nelson v. Federal Nat’l Mortg. Ass’n, 97 So.3d 770, 775 (Ala.Civ.App.2012).

. Even assuming that the statement of its attorney could be said to be evidence indicating that BAC was the servicer of the mortgage debt, a transfer of the rights to service a loan to an entity such as BAC might, but does not necessarily, transfer to the servicer the note secured by the mortgage. Nelson, 97 So.3d at 777.

. None of the letters referenced in this paragraph was authored by BAC’s appellate counsel.