Rel: February 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0625

_____

## Memorie Martinez, Just Kid'n Around, LLC, and Daphne Auction House, LLC

### v.

## Jubilee Gymnastics Academy, LLC

### Appeal from Baldwin Circuit Court
### (CV-21-900358)

FRIDY, Judge.

Memorie Martinez; Just Kid'n Around, LLC ("JKA"); and Daphne Auction House, LLC ("DAH"), appeal from a judgment of the Baldwin Circuit Court ("the circuit court") granting the summary-judgment motion of Jubilee Gymnastics Academy, LLC ("Jubilee"), with respect to

its ejectment claim against Martinez, JKA, and DAH; denying the partial-summary-judgment motion of Martinez and JKA with respect to some of their claims against Jubilee; and dismissing, with prejudice, all the claims that Martinez and JKA had asserted against Jubilee. For the reasons discussed herein, we reverse the circuit court's judgment and remand the cause for further proceedings consistent with this opinion.

## Background

On April 5, 2021, Jubilee commenced an action in the circuit court in which it stated a claim of ejectment and a claim of unlawful detainer against Martinez and DAH. Jubilee's complaint alleged that it owned title to a specified parcel of land improved with a building ("the property") that was located on Equity Drive in Daphne; that Martinez and DAH were occupying the property pursuant to a month-to-month lease; that, on January 11, 2021, and, on January 29, 2021, Jubilee had sent Martinez and DAH written notice by certified mail informing them that Jubilee would be terminating their month-to-month lease in thirty days; that more than thirty days had elapsed since Martinez and DAH had received Jubilee's written notice of termination; and that Martinez and DAH had refused to surrender possession of the property. As relief,

Jubilee sought possession of the property and the recovery of its attorney's fees and court costs.

On May 10, 2021, Martinez and JKA[1] moved the circuit court to dismiss Jubilee's unlawful-detainer claim on the ground that the circuit court lacked subject-matter jurisdiction over that claim. That same day, Jubilee amended its complaint to state a claim of ejectment only against Martinez and DAH. On July 19, 2021, the circuit court entered an order dismissing Jubilee's unlawful-detainer claim.

On June 11, 2021, Martinez and JKA answered Jubilee's complaint, as amended, denying the material allegations of the complaint and asserting several affirmative defenses. Their answer also pleaded counterclaims against Jubilee. As the factual basis for their counterclaims against Jubilee, Martinez and JKA alleged that, on May 1, 2012, Jubilee and JKA had entered into a commercial lease-purchase agreement ("the lease-purchase agreement"); that, pursuant to the lease-purchase agreement, Martinez and JKA had agreed to pay Jubilee $2,407.61 per month, plus taxes and insurance for, the term of the lease-

---

[1]The record contains no indication that DAH ever possessed the property.

3

purchase agreement; that Martinez and JKA had taken possession of the property pursuant to the lease-purchase agreement; that Martinez and JKA had made 107 of the monthly payments required by the lease-purchase agreement; and that Martinez and JKA had paid the taxes and assessments on the property since they and Jubilee had entered into the lease-purchase agreement. Based on those allegations, Martinez and JKA stated a counterclaim against Jubilee seeking a declaration that the lease-purchase agreement was in full force and effect and that Martinez and JKA were entitled to remain in possession of the property. They also stated counterclaims seeking damages based on theories of breach of contract, fraudulent misrepresentation, and unjust enrichment. Martinez and JKA demanded a jury trial regarding all issues in the action. On August 16, 2021, Jubilee answered Martinez and JKA's counterclaims; Jubilee denied the material allegations of Martinez and JKA's counterclaims and asserted, among other affirmative defenses, § 8-9-2, Ala. Code 1975, ("the Statute of Frauds").

On October 13, 2021, Jubilee commenced an unlawful-detainer action against Martinez and DAH[2] in the Baldwin District Court ("the

_____

[2]See n.1, supra.

4

district court"), seeking possession of the property. Following a trial, the district court, on December 13, 2021, entered a judgment in favor of Martinez and DAH. On December 16, 2021, Jubilee appealed from the district court's judgment to the circuit court. The parties then filed a joint motion asking the circuit court to consolidate Jubilee's appeal from the district court's judgment with Jubilee's ejectment action in the circuit court, and the circuit court granted that motion on May 4, 2022.

On January 26, 2023, Martinez and JKA amended their answer and counterclaim to state additional counterclaims of fraudulent suppression, deceit, and private nuisance against Jubilee. On April 26, 2023, Jubilee answered the amended counterclaim of Martinez and JKA; Jubilee denied the material allegations of the amended counterclaim and asserted, among other affirmative defenses, the Statute of Frauds.

On August 23, 2023, Jubilee moved for a summary judgment with respect to its ejectment claim against Martinez, JKA, and DAH. As the factual basis of its motion, Jubilee asserted that Martinez and JKA were occupying the property pursuant to an oral, month-to-month lease and that Jubilee had terminated that lease by giving Martinez and JKA thirty days' notice of the termination. Jubilee also asserted that the

5

Statute of Frauds precluded Martinez and JKA from claiming a right to possess the property based on the lease-purchase agreement because, Jubilee said, it did not sign the lease-purchase agreement and because, Jubilee said, Martinez's signature on the lease-purchase agreement was not notarized. Jubilee's motion also asserted that, because Martinez and JKA possessed the property based solely on an oral, month-to-month lease that Jubilee had terminated, the circuit court should deny the claims that Martinez and JKA had asserted against Jubilee. Jubilee supported its summary-judgment motion with, among other things, the depositions of George Tarlton, one of the members of Jubilee, the deposition of Martinez, and some text messages between Tarlton and Martinez during a period beginning in January 2015 and ending in March 2021.

In his deposition, Tarlton testified that in 2001, he and Bradley T. Sawyer formed Jubilee, with Tarlton and Sawyer designated as the sole members. He said that, later in 2001, Jubilee purchased a parcel of unimproved land on Equity Avenue in Daphne where it constructed a building. That parcel of land and the building that Jubilee subsequently constructed on it constitute the property at issue.

6

Tarlton further testified that in 2007, Martinez, acting as the real-estate agent of her sister, Melanie Wolfe, submitted a written offer by Wolfe to purchase the property from Jubilee for $420,000. He said that the offer provided that the sale was to be closed within twenty-four months of the date Jubilee accepted the offer, that the deed to the property was to name Wolfe or her assigns as the purchaser, and that Wolfe was to pay rent in the amount of $4,000 per month until the closing of the sale. According to Tarlton, Jubilee accepted Wolfe's offer effective July 18, 2007, and, during the twenty-four-month period following Jubilee's acceptance of Wolfe's offer, Martinez and Wolfe operated JKA, a child daycare, on the property.

Tarlton testified that Wolfe had not closed her purchase of the property within twenty-four months of July 18, 2007, and her offer to purchase the property expired by its terms at the end of that twenty-four-month period. According to Tarlton, when the twenty-four-month period for Wolfe to close the purchase expired in 2009, Martinez asked Tarlton to lease the property to her so that the daycare that she and Wolfe had been operating on the property could continue to operate there, and Tarlton agreed. He said that in August 2011, the Alabama Department

7

of Human Resources suspended JKA's license to operate a daycare, and JKA vacated the property.

Tarlton testified that Jubilee then leased the property to Wayne Mercadal, who occupied the property for a brief period before defaulting on his lease and abandoning the property. He said that after Mercadal abandoned the property, Martinez, acting on her own behalf, asked Tarlton to rent the property to her. Tarlton testified that he, on behalf of Jubilee, and Martinez orally agreed that Martinez would rent the property on a month-to-month basis. He said that the rent that Tarlton and Martinez agreed to in the oral month-to-month lease was $2,400 per month.

Tarlton testified that he believed that it was about January or February 2012 when Martinez again took possession of the property. Tarlton testified that he believed that it was in late April 2012 when Martinez asked him about the possibility of purchasing the property. Tarlton said that, as a result of Martinez's inquiry, he had employed an attorney to draft a lease-purchase agreement. Tarlton said that he received an initial written draft of the lease-purchase agreement, which, he said, erroneously specified a purchase price of $350,000 instead of

8

$420,000.  Tarlton said that he did not remember any discussion with Martinez about reducing the purchase price to $350,000 to give Martinez a credit for the rent she had paid since 2007. Tarlton testified that he gave the attorney the information for the lease-purchase agreement, but, he said, the attorney erroneously omitted a provision for a downpayment from the initial draft of the lease-purchase agreement. Tarlton said that he had given Martinez a copy of the initial draft of the lease-purchase agreement and that she had told him that she would have her attorney review it and get back in touch with him. Tarlton said that he did not see Martinez sign the initial draft of the lease-purchase agreement and that he had no recollection of her signing it and handing it back to him.  He also testified that he has no recollection of Martinez printing out an amortization schedule and attaching it to the draft of the lease-purchase agreement. Tarlton said that he and Martinez had an oral agreement that she would pay rent in the amount of $2,400 per month and would pay the insurance and property taxes on the property when they became due.

Tarlton testified that when the 2007 agreement with Wolfe expired in 2009, Martinez began paying Jubilee $2,400 per month in rent. He

said that the initial draft of the lease-purchase agreement specified a term of twenty years and that, after he gave Martinez a copy of that initial draft, she told him that her attorney had told her that she could not sign it yet because, her attorney said, she first had to resolve a dispute with Rivers Carlton, the other member of JKA. Tarlton testified that Martinez ended that dispute in April 2015. He said that, his opinion, the initial draft of the lease-purchase agreement that he gave Martinez was not complete because it had omitted a provision for a downpayment. Tarlton denied that he had ever received a signed copy of the initial draft of the lease-purchase agreement that he had given Martinez. He said that Jubilee's bank, which held a mortgage on the property, told Tarlton that he could not sell the building while the bank had a mortgage on it because, the bank said, it was not willing to subordinate its mortgage to another mortgage.

In her deposition, Martinez contradicted Tarlton's testimony that she had taken possession of the property before May 1, 2012, testifying as follows:

> "Q. Let's see. So, you say Mr. Mercadal occupied the subject property until sometime in 2012, and then you began to occupy it pursuant to the Commercial Lease Purchase Agreement dated May 1, 2012?

"A. Yes.

"Q. Are you saying you began to occupy it on May 1?

"A. I took possession over the -- back over the building, but I never opened back up Just Kid'n Around, LLC. I never opened any business back in that building.

"Q. You were not in possession of the building or paying rent before that date?

"A. <u>No. I started paying per the Purchase Agreement that I had with George that he dropped off to me that I signed. My first note payment was not due until June 1, 2012.</u>"

(emphasis added)

Martinez further testified in her deposition that Tarlton had told her that they could not handle the lease-purchase transaction in the usual way with a deed and a mortgage because Jubilee had a mortgage on the property. She said that Tarlton had brought the lease-purchase agreement to her office in the building where she was operating an after-school program under the name DAH, which was located across the street from the property. She testified that they had sat there in her office, that she had read the lease-purchase agreement, and that she had noticed that the lease-purchase agreement did not have an amortization schedule attached to it. She said that she had used her computer to generate an

11

amortization schedule, printed it, and attached it to the lease-purchase agreement. The amortization schedule attached to the lease-purchase agreement shows that it was printed on May 1, 2012. She said that the lease-purchase agreement originally listed Eastern Shore Properties, LLC, a management company she owned, as the lessee-purchaser but that she decided at the meeting on May 1, 2012, to change the name of the lessee-purchaser to JKA, so she marked out the name Eastern Shore Properties, LLC; wrote JKA's name in place of Eastern Shore Properties, LLC; initialed the change; signed the lease-purchase agreement; and gave it to Tarlton. Martinez said that Tarlton was supposed to sign the lease-purchase agreement, get Sawyer to sign it, and return it to Martinez. Martinez testified that she did not have her signature notarized because there was no notary public onsite at her office on May 1, 2012.

In the text messages between Tarlton and Martinez, Tarlton frequently informed Martinez that he needed a check from her. In some of the texts, Tarlton characterized the check he was asking Martinez to provide as a "rent check," but, in other text messages, he merely stated that he needed a "check" without characterizing it as a rent check. In a

text message that Martinez sent Tarlton in 2015, she stated that she was free from her partner in JKA and that "[n]ow that he can't try and claim anything else, I can [sic] would like to finish the paperwork on the building." Tarlton responded: "Sounds good. What do you want to do?" Martinez answered: "Just wanted to make sure its all finalized. That we are good. [T]he owner financing that we did on the daycare." Tarlton asked if Martinez wanted a lease and asked whether Martinez still had her notes because, Tarlton said, he "did not remember the details." Martinez answered: "Yes I still have all the paperwork. I will be back in town tomorrow and will send it over." Tarlton then said: "I will have to review it. Honestly cannot remember the details." Martinez then said: "All I remember is we finalized everything except for the LLC."

In a later text, Tarlton said: "Need to update my files. Do you want to work towards a lease?" Martinez responded: "I am confused. You did owner financing for me on the building several years back. I've been paying you per the mortgage. And I have gotten the insurance on the building that you requested. Why do I need a lease?" In response, Tarlton said: "Did we ever sign the paperwork? I may be going crazy. I thought there was a down payment required??? Please find the paperwork and

13

refresh my memory???" Martinez then replied: "No down payment and yes[,] it is signed. You gave it to me[.] I signed it and gave it back with the payment and then I worked on the insurance." Tarlton then said: "Too much going on. I honestly did not know that we ever implemented it. I know that we added property insurance and taxes to the monthly payment. I will check my files." Martinez then said: "The owner financing is why we added those two." Tarlton responded: "I just need to review the contract ... why have we never closed it and transferred the property to your name??? I will review my file today. Does not make sense[.]" Martinez then said: "You said you had a mortgage on the property and could not close it with a title company, but you had your attorney do the paperwork." Tarlton replied: "??? let me review the file. I guess I am losing it." Later, Tarlton said: "Please get me a copy of that contract. I cannot lay my hands on it." Martinez replied: "I will have to find it. It's packed up in storage." Tarlton responded: "10-4. I do not have a copy in my file. I want to review it asap so that we know what is what." Martinez responded: "I do too. I haven't been paying on a building for all these years for nothing." Tarlton said: "I understand. Just want to verify the agreement and for some reason I do not have it."

On September 22, 2023, Martinez and JKA moved the circuit court for a partial summary judgment (1) ruling in their favor insofar as their counterclaim sought a declaration that the lease-purchase agreement that the parties had allegedly entered into in 2012 was a valid, binding, and enforceable agreement; (2) ruling in their favor on their breach-of-contract claim based on Jubilee's alleged breach of the lease-purchase agreement; and (3) ruling in their favor that Jubilee could not prevail on its Statute of Frauds affirmative defense because, Martinez and JKA said, they had established the partial-performance exception to the Statute of Frauds. On October 10, 2023, Martinez, JKA, and DAH filed a response to Jubilee's summary-judgment motion. In their response, Martinez, JKA, and DAH asserted that Jubilee was not entitled to a summary judgment with respect to its ejectment claim because, Martinez, JKA, and DAH said, Martinez had lawfully entered and taken possession of the property and remained in possession of the property pursuant to the lease-purchase agreement that Tarlton had given Martinez, which she had signed on May 1, 2012. Martinez JKA, and DAH argued that the Statute of Frauds did not preclude them from claiming a lawful right to possession of the property because, they said,

15

they had satisfied the partial-performance exception to the Statute of Frauds.

Martinez, JKA, and DAH supported their response to Jubilee's summary-judgment motion with, among other things, an affidavit signed by Martinez. In that affidavit, Martinez testified:

"1. I am an adult resident of Baldwin County, Alabama, under no legal disability.

"2. I am the managing member of [JKA]. I make this affidavit based on my own personal knowledge in my individual capacity and in my capacity as managing member of [JKA].

"3. [Jubilee] is owned and/or managed by Mr. George Tarlton, and I will refer to him throughout this Affidavit as 'Mr. Tarlton' but intend for those references to include him in his capacity as an agent of [Jubilee].

"4. In 2007, my sister, Melanie [Wolfe], entered into an agreement with [Jubilee] to purchase the [property]. After my sister entered into the agreement, Mr. Tarlton allowed [JKA] to occupy and operate a day care facility at the property. [JKA] paid [Jubilee] $4,000 a month for its occupancy of the property until it vacated [the property] in 2011.

"5. Mr. Tarlton subsequently approached me about purchasing the property after his prior tenants, Wayne Mercadal and Little Feet First Learning Academy, LLC, vacated the property.

"6. During my discussion with Mr. Tarlton in 2012, we discussed and agreed that [Jubilee] would sell the property to me for $350,000.00 payable over twenty years. Mr. Tarlton

16

informed me that he wanted to structure the sale as owner financing because there was a mortgage on the property. Mr. Tarlton offered to reduce the purchase price from the amount of $420,000.00 in the 2007 agreement to $350,000.00 to give me credit for monies I had already paid from 2007 until 2011. Mr. Tarlton allowed me to take possession pursuant to these terms and stated that he would have his attorney draft an agreement.

"7. On May 1, 2012, Mr. Tarlton personally delivered two copies of a written agreement titled 'Commercial Lease Purchase Agreement' to me. A true and correct copy of the Commercial Lease Purchase Agreement is attached hereto as Exhibit 5-A. I signed both copies that day and I handed one of the signed copies back to Mr. Tarlton.

"8. I timely paid the first payment due on June 1, 2012, under the Commercial Lease Purchase Agreement.

"9. Since entering into the Commercial Lease Purchase Agreement, I have continued to make monthly payments pursuant to the Commercial Lease Purchase Agreement totaling over $350,000, and [Jubilee] has accepted those payments.

"10. I received a letter dated January 29, 2021, from [Jubilee's] attorney stating that he was terminating my 'month to month lease' of the property. A true and correct copy of the January 29, 2021, letter is attached hereto as Exhibit 5-B.

"11. Since sending the letter dated January 29, 2021, [Jubilee] has accepted and continues to accept my payments of the required monthly amounts under the Commercial Lease Purchase Agreement.

"12. I received a letter dated August 27, 2021, from [Jubilee's] attorney stating that he was terminating my

17

'month to month lease' of the property. A true and correct copy of the August 27, 2021, letter is attached hereto as Exhibit 5-C.

"13. Since sending the letter dated August 27, 2021, [Jubilee] has accepted and continues to accept my payments of the required monthly amounts under the Commercial Lease Purchase Agreement.

"14. I have invested over $350,000.00 in purchasing this property pursuant to the Commercial Lease Purchase Agreement and with the understanding that at the end of the term of the Commercial Lease Purchase Agreement I would own the property.

"15. I have incurred attorney fees in defending against two district court unlawful detainer actions, defending myself against [Jubilee's] claims in Circuit Court and asserting my own claims in Circuit Court to protect my interest in the property."

On October 11, 2023, Jubilee filed a response to Martinez and JKA's partial-summary-judgment motion in which it reasserted the same arguments it had made in support of its summary-judgment motion. Jubilee supported its response with copies of documents that it had obtained through nonparty subpoenas. Those documents indicated that JKA's name was on the records of utility companies serving the property before May 1, 2012.[3]

---

[3]The brief of Martinez, JKA, and DAH indicates that they filed a motion to strike those documents, but that motion is not in the record.

18

Following a hearing regarding the cross-motions for summary judgment, the circuit court entered a judgment on October 21, 2023, that granted Jubilee's summary-judgment motion, denied Martinez and JKA's partial-summary-judgment motion, and dismissed all Martinez and JKA's counterclaims with prejudice. The judgment states:

"Upon review of Motions for Summary Judgment submitted by the parties, supporting exhibits, and after conducting a hearing on the Motions, the Court finds that [Jubilee's] Motion for Summary Judgment is due to be GRANTED and [Martinez and JKA's] Motion for Summary Judgment is DENIED as follows:

[Martinez and JKA] have occupied [Jubilee's] property pursuant to a verbal month-to-month tenancy agreement for $2,730.00 per month and that occupancy began prior to May 1, 2012. The Commercial Lease Purchase Agreement was never finalized by the parties and [Martinez and JKA's] occupancy began prior to the May 1, 2012, date of the Commercial Lease Purchase Agreement which was never finalized or mutually agreed to by the parties, and therefore does not satisfy § 8-9-2, Ala. Code (1975).

"[Martinez and JKA] received proper notice to vacate the property and [their] continued occupancy of the property entitles [Jubilee] to all rent payments previously paid by [Martinez and JKA] and [Jubilee] is entitled to a judgment for $19,110.00 for the seven months of rent payments that were returned [to Martinez and JKA]. [Martinez and JKA] are due to be ejected from the property and [Jubilee] is entitled to immediate possession of the property.

"[Martinez and JKA's] counterclaims are denied and dismissed with prejudice."[4]

On November 20, 2023, Martinez, JKA, and DAH filed a postjudgment motion challenging the circuit court's judgment and requested oral argument regarding that motion. On November 27, 2023, the circuit court denied the postjudgment motion without holding a hearing.

On January 5, 2024, Martinez, JKA, and DAH filed a of appeal to our Supreme Court.[5] On August 12, 2024, our supreme court issued an

_____

[4]The judgment did not adjudicate Jubilee's appeal from the district court's judgment ruling against Jubilee in its unlawful-detainer action.

[5]Our supreme issued an order directing Martinez, JKA, and DAH to show cause why, in the absence of an adjudication of Jubilee's appeal from the district court's judgment ruling against Jubilee in its unlawful-detainer action, the supreme court should not dismiss their appeal as being from a nonfinal judgment. However, in Nettles v. Rumberger, Kirk, & Caldwell, P.C., 276 So. 3d 663, 669 (Ala. 2018), our supreme court held that "[o]nce a final judgment has been entered in a case, it is immediately appealable, regardless of whether it is consolidated with another still pending case." Nettles overruled Hanner v. Metro Bank & Protective Life Insurance Co., 952 So. 2d 1056, 1060 (Ala. 2006), which had held that "'a trial court must certify a judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., before a judgment on fewer than all the claims in a consolidated action can be appealed.'" Under Nettles, the judgment entered in Jubilee's ejectment action was a final, appealable judgment even though Jubilee's appeal from the district court's judgment ruling against it in its unlawful-detainer action remained pending and the

20

order finding that the appeal was within this court's original jurisdiction and transferring the appeal to this court.

Standard of Review

An appellate court reviews a summary judgment de novo and uses the same standard of review that the trial court used in determining whether to grant the summary-judgment motion. See Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038 (Ala. 2004). Specifically, the appellate court must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Id. In making such a determination, the appellate court must review the evidence in the light most favorable to the nonmovant. Id. Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce substantial evidence indicating that there is a genuine issue of material fact. Id. Substantial evidence is evidence of such weight and quality that fair-minded persons in the

circuit court had not certified its judgment in the ejectment action as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.

21

exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. See Dow, 897 So. 2d at 1039.

Analysis

On appeal, Martinez, JKA, and DAH argue that the circuit court erred in granting Jubilee's summary-judgment motion because, they say, they established that there was a genuine issue of material fact regarding whether Jubilee was entitled to a judgment as a matter of law with respect to its ejectment claim. In an ejectment action, the burden is on the plaintiff, not the defendant, to prove superior title to the property in question. See Sturdivant v. BAC Home Loan Servicing, LP, 159 So. 3d 47, 53-54 (Ala. Civ. App. 2013).

Jubilee asserted that it had the right to possession of the property because it held fee simple title to the property whereas Martinez, JKA, and DAH had nothing more than an oral, month-to-month lease that Jubilee had terminated by giving them thirty days' notice of the termination. Jubilee further asserted that the lease-purchase agreement that Martinez signed conferred no interest in the property on Martinez, JKA, and DAH because, Jubilee said, it did not sign the lease-purchase agreement and, therefore, that agreement did not comply with the

22

Statute of Frauds. The Statute of Frauds, § 8-9-2, provides, in pertinent part:

> "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
>
> "….
>
> "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller[.]"

Jubilee argues that, because it did not sign the lease-purchase agreement, the Statute of Frauds precludes Martinez, JKA, and DAH from claiming an ownership interest in the property based on that agreement.

Martinez, JKA, and DAH, on the other hand, argue that they presented substantial evidence indicating that they had satisfied the partial-performance exception to the Statute of Frauds. As quoted above, § 8-9-2(5) expressly excepts from its operation purchasers who pay "the purchase money, or a portion thereof" and who are "put in possession of the land by the seller." In response, Jubilee argues that the partial-

23

performance exception to the Statute of Frauds is not applicable because that exception requires proof that the possession of the party asserting that exception is exclusively referable to the alleged oral contract, see Holman v. Childersburg Bancorporation, Inc., 852 So. 2d 691, 697-99 (Ala. 2002), and that, in the present case, Tarlton testified that Martinez and JKA had taken possession of the property in January or February 2012 pursuant to an oral, month-to-month lease. Jubilee says that, because Martinez and JKA took possession of the property pursuant to an oral, month-to-month lease four or five months before Martinez allegedly signed the lease-purchase agreement on May 1, 2012, Martinez and JKA's possession of the property is not exclusively referable to the alleged lease-purchase agreement that Martinez signed on May 1, 2012.

The flaw in Jubilee's argument is that Martinez's testimony contradicted Tarlton's testimony that Martinez and JKA had taken possession of the property in January or February 2012 pursuant to a month-to-month lease. Martinez testified that she and JKA had not taken possession of the property before she signed the lease-purchase agreement on May 1, 2012. Moreover, she testified that she had made the payments required by the lease-purchase agreement after she and JKA

24

took possession of the property. Thus, the evidence before the circuit court established a genuine issue of material fact regarding whether Jubilee was entitled to a judgment as a matter of law with respect to its ejectment claim and, therefore, the circuit court erred in granting Jubilee's summary-judgment motion as to that claim. Moreover, because Jubilee was not entitled to a summary judgment with respect to its ejectment claim, the circuit court erred in granting Jubilee relief based on that claim in the form of an award of possession of the property and an award of $19,110.00 in damages.

Martinez and JKA also argue that the circuit court erred in dismissing, with prejudice, all their counterclaims against Jubilee because, they say, Jubilee did not move for a summary judgment with respect to Martinez and JKA's counterclaims and, even if it did, it did not make a prima facie showing that there was no genuine issue of material fact with respect to those counterclaims or that it was entitled to a judgment as a matter of law with respect to those counterclaims. In Sampson v. HealthWise Health Systems Corporation, 386 So. 3d 411, 424-26 (Ala. 2023), our supreme court held that it is reversible error for a trial court to enter a summary judgment as to claims that the summary-

25

judgment motion has not challenged. Assuming, without deciding, that Jubilee's summary-judgment motion challenged Martinez and JKA's counterclaims against Jubilee, the circuit court erred in dismissing those counterclaims for the same reason it erred in granting Jubilee's summary-judgment motion as to Jubilee's ejectment claim -- Martinez and JKA presented substantial evidence indicating that the lease-purchase agreement fell within the partial-performance exception to the Statute of Frauds and thereby established the existence of a genuine issue of material fact regarding their counterclaims against Jubilee. Therefore, we reverse the circuit court's judgment insofar as it dismissed Martinez and JKA's counterclaims against Jubilee.

Finally, Martinez, JKA, and DAH argue that the circuit court erred in failing to hold a hearing regarding their postjudgment motion because, they say, their postjudgment motion had probable merit. However, our reversal of the circuit court's judgment on other grounds renders their final argument moot.

<u>Conclusion</u>

26

For the foregoing reasons, the circuit court's judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Lewis, JJ., concur.